Good morning. May it please the Court, my name is Eric Babcock and I represent Mr. Dost. I would like to reserve two minutes, if I might, for possible rebuttal. First, I'd ask the Court to look at the forest instead of the trees here. My client was not allowed to know the names of two of the witnesses against him, one of whom was one of the most important witnesses in the case, in my view. The Supreme Court in Smith v. Illinois some 50 years ago reversed a conviction on just those grounds. The gentleman was tried on a drug case. The informant, who was the material witness against him, admitted on cross-examination that the name he'd been using was not his real name. The defense lawyer asked his real name, the prosecutor objected, the judge sustained the objection, did not allow the defendant to learn the informant's name or where he lived. The Supreme Court found that sufficient to reverse the gentleman's conviction. The Court found that knowing someone's identity and where they're from is the heart of any effective cross-examination. That opinion was took, got eight of nine votes on the Supreme Court, and the only dissenter didn't dissent on the merits. Justice Harlan thought reviews just shouldn't have been granted. Now there is an informant in this case, and you did have that informant's identity, correct? The informant in this case was known to my client. Pardon me? The informant was known to my client, which is why he's not part of this appeal. But the case agent, who met with my client here in the United States, was certainly not known to my client. And the agent in Afghanistan, who participated in these drug deals in Afghanistan, was not known to my client, never met my client, I don't think had ever been to the United States before we testified. So I don't think there's any question that you preserved your argument as to Mustafa. How did you preserve this issue on appeal with regard to Iqbal? What exactly did you say that preserved this argument on appeal? Well, the government initially filed a motion for miscellaneous relief as to the agent, Mustafa, or not Mustafa, the agent. And I filed, I don't know, I think a 10-page opposition. And shortly after that, the government filed another motion requesting anonymity for the agent. I thought the arguments in my motion, I didn't know the specifics because the factual proffers were under seal as to the first filing. So I couldn't respond as to the specifics. I could only make general legal arguments, which were, I thought, applicable to both the agent and the Afghani officer. But with regard to Iqbal, you specifically said, realistically, no background investigation I'm going to be able to do on him, even if I know, on the Afghan agent, even if I knew who he was. I mean, that's what you said on the record, right? That's what I said on the record. But at least I would have been able to talk to my client who had some knowledge of Afghanistan and perhaps gleaned other information. I certainly wasn't proposing to go there myself. But in any event, I think that only goes to whether it's harmless error, not whether there was error. Because as Judge Donato found, there was no factual proffer made as to support the anonymity of Iqbal. So with regard to Mustafa, I mean, you're not arguing that no matter what the facts are, you're entitled to a name. I mean, there's a test that we have to apply, and it's not just that you always get the name, right? I mean, and the question is, I think, how involved was the person? How helpful would the name be to the defense? And what's the government's interest in nondisclosure? So why don't you take a minute and address, if I've stated the test correctly, those aspects of the test. If I could just point out at the beginning of your question, actually, the Supreme Court has never ruled that there are times where you can't get the true name. The Court's opinions said you're entitled to the true name. All of the jurisprudence supporting the government's right to allow some witnesses to testify under pseudonyms are only circuit opinions. There are no Supreme Court opinions allowing that. The Supreme Court said pretty clearly in Smith v. Illinois, you're entitled to the name, and you're entitled to know where they live. If you don't get it, it's a reversible error. So all of the Supreme Court, all of the Court of Appeal opinions saying that some witnesses can testify anonymously are based on the concurring opinion by Justice White. And I'll admit, all the circuits have allowed this, including this circuit, for over 40 years now. And essentially, they have to prove that there's a threat, and then this Court has to decide whether or not the anonymous testimony deprived the defendant of a right to effective cross-examination. Here in this case, you received impeachment materials for the Mustafa, right? Judge Donato ordered the government to do a search for impeachment materials and disclose anything they found. And they ordered the government to provide me with some background information about his training, how long he'd been an agent, where he'd been trained, that type of thing. There was no, as you can see from the record, there was nothing disclosed that was useful in cross-examination of Agent Mustafa. Did you at any time complain about the scope or deficiencies with respect to the potential impeachment material that the government provided to Mr. Dost? No. I mean, Judge Donato basically told them to provide anything that could be useful in cross-examination. So, what I got was what was there, I assume. So, I don't think there's any question that there was an error with respect to Iqbal. As Judge Donato noted, there was no declaration supporting any threats to his safety. Not that they couldn't have been done, not that the threats couldn't have been proven, but they just weren't. As to Mustafa, I don't know what was in the undersealed declaration submitted by the Assistant Director of the Anti-Terrorism Division, I think. The court can review that for itself. Judge Donato found it sufficient. I would be surprised if there were any threats specific to my case and my client. Did you want to reserve the rest of your time? Yes. Sorry. Thank you. No, no. That's fine. Thank you, counsel. Good morning, Your Honors. May it please the Court, my name is Nick Hill-Bagot, and I represent the United States in this appeal. Under the very specific circumstances of this case, the District Court did not abuse its discretion or plainly err when it allowed two witnesses, an undercover FBI agent and an undercover Afghan police officer, to testify under pseudonyms. And moreover, because the disclosure of these two witnesses' true names would not have altered the outcome of this trial, any alleged error is harmless. Your Honors, the District Court did exactly what it was supposed to do under the Supreme Court's cases in Van Arsdal, in Ravario, and in Smith. It conducted a careful balancing analysis, balancing the defendant's right to confrontation with the government's interest here in witness safety and in national security. And in fact, Your Honors, Judge Donato below took pains to place, he only placed limits on the defendant's confrontation clause rights by what he called, quote, the least intrusive means. And that's at the written order at Record 747. The District Court made a number of very specific findings here with regard to both of these witnesses. With regard to the FBI agent, the District Court found that disclosure would jeopardize national security, that it would compromise the value and usefulness of one of just a handful of undercover FBI agents who were engaged in counterterrorism work. The District Court also found that disclosing this agent's name would disclose FBI techniques to foreign intelligence services. And finally, also found that disclosing the name would place the agent and his family at risk. With respect to the Afghan officer, Iqbal, the government did not, it is true the government did not submit a declaration in support of its motion as to Iqbal. But the government provided very specific facts that the District Court accepted in this case. The government provided specific evidence that the Afghan officer was going to continue to conduct undercover counter-narcotics work in Afghanistan. That after the arrest in this case, a person connected to this case had offered a reward of $40,000 in order to locate this person. And as we note in our briefing, $40,000 in Afghanistan means something a lot different than it does in the United States. Was there a reason why the government didn't provide a declaration with respect to Mr. Iqbal, but you did so for Mustafa? So, Your Honor, it's not in the record why there was not a declaration provided as to Iqbal. With respect to Mustafa, the undercover officer, the government provided that declaration pursuant to the procedures of the Classified Information Procedures Act. And that statute lays out how the government's supposed to provide that information to the court. And that includes a sealed declaration that was filed in accordance with the classified procedures as well as the ex parte procedures. So, as I understand the evidence, the defendant testified and admitted he was part of a plan to heroin in Afghanistan, but he said that any discussion about the United States were lies. Is that the substance of his testimony on that issue? So, that's one part of it, Your Honor. He did not dispute anything that he said to Mustafa, the FBI agent. He was asked on direct, do you dispute any of that stuff you told him? He said no. But I think the gist of the testimony was, well, I was just bragging to the FBI agent and to impress him that I had all these connections in the United States when really, in fact, that wasn't the case. So, that was a key part of his defense, that yes, I said it, but I didn't really mean it. I think that would be one part of the defense. And the other part of Mr. Doe's testimony was, look, you know, I got involved in the drugs and I was part of this, but I didn't really get involved in it until the informant got me involved in it. And so, there wasn't an entrapment defense presented sort of in the end at this trial, but I think a fair characterization of Mr. Doe's testimony would be, look, all the things that I said to Mustafa weren't really true, and also, with respect to the informant, he's the one who sort of got me into this. Was an entrapment instruction requested or given? No, Your Honor, to both of those things. And I would also say, Your Honor, Mustafa's testimony was lengthier than Iqbal's in this case, and certainly we don't dispute that, but if you look at the substance of Mustafa's testimony in this case, it's almost entirely authenticating audio and video recorded evidence, none of which the defendant disputed when he testified. So, going to the harmless point, it's difficult to see how knowing Mustafa's true name would have changed things in this case, particularly because when the district court conducted its balancing tests, as was mentioned with the argument with the appellants, the district court also ordered the disclosure of background information, training information, employment information, as to both of these witnesses. Your Honor, you mentioned that Mr. Dost had admitted to his involvement in the 5-kilogram deal, and that was the subject of count three here. But Mr. Dost also admitted to drug traffic in other aspects of his testimony. He said that he was trying to find someone to sell heroin, that's at Record Excerpt 168. He testified that, well, I didn't know anything about drugs until I met the informant, until the informant got me involved. All of those were admissions that, again, also go to the harmlessness here. But for Mr. Iqbal, the government argued that Mr. Dost had forfeited this argument with respect to him. Is there — was there any reason why he didn't argue that — whether he waived that argument as opposed to forfeiting it? Your Honor, I think — I think — I'm not — I'm not entirely sure that we didn't — we didn't argue that he waived it. I think what we said was the correct standard that this Court should apply here is plain error because it wasn't raised below. And certainly, there's nowhere in the district court's record where you can find where the issue of Iqbal comes up. And as the Court mentioned previously, in fact, Dost's counsel admits that he wasn't going to do any kind of investigation with respect to — with respect to Iqbal. And, again, you know, the cases that are mentioned here, the Gutierrez de Lopez case in the 10th Circuit, the El Mazen case in the Fifth Circuit, all of these cases talk about balancing tests, and they also talk about making sure that the government has specific reasons. And we would submit that in this case, the district court found that with regard to the FBI agent Mustafa, there was a detailed declaration set out from which it was able to make those very specific findings. And with respect to Iqbal, although there was no declaration, there certainly was the government's motion. And attached to the government's motion was a DEA report that set out the very specific recorded conversation that was intercepted where the — where the person had set out that $40,000 specific reward for the location of this undercover agent. JUSTICE BREYER. What about the argument that was made that, you know, the Supreme Court has never authorized there to not be a disclosure of identity and residence or location? MR. GARRETT. So, Your Honor, I'm not sure that's entirely accurate. So in the Van Arsdal case, the district — the Supreme Court said that the district court has wide latitude to place reasonable limits on confrontation clause right is not unlimited. In Revario, the Supreme Court said that there's, quote, no fixed rule with respect to disclosure. And in Smith — in Smith, they characterized the confrontation clause right as, quote, the adequate opportunity to place a witness in his proper setting and put the weight of his testimony and credibility to attest. And in this case, particularly given that the district court provided the background information, the training records, the employment information of both of these witnesses, certainly the defendant had that opportunity as to both Iqbal and as to Mustafa. So unless the Court has any other questions, the government would request that the Court affirm the judgment.  CHIEF JUSTICE ROBERTS. Thank you, counsel. You have a couple of minutes left. MR. GARRETT. Thank you, Your Honor. Just briefly, the standard review for confrontation issues, restrictions on cross-examination is de novo by this Court. It's not abuse of discretion. If the Court finds that there was some sort of waiver or forfeiture of the issue as to Iqbal, I would still say there's plain error because the law requires a declaration, and no declaration was provided. As to Mustafa, I would obviously disagree with the characterization that his testimony was just authenticating videos. It was not. I was there. It was devastating. He offered opinions about things that my client said, about whether they were the kinds of things that an experienced drug trafficker would say. His testimony was not just some sort of custodian here. Finally, as to the threats, the government was asking for a sentence of something closer to 20 years here. I forget. Judge Zanotta gave him 10, which was their mandatory minimum because my client was working in an outlet store in Livermore. He was not an international drug trafficker. He may have been an aspiring one, obviously, but there were no threats by my client or relating to my client. It was all just puffery. Thank you, Your Honor, if you don't have questions. Thank you, Your Honor. Thank you. The case just argued will be deemed submitted.
judges: Bennett, Lee, Piersol